**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| George & Company LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-04739 |
| v. | ) | |
| | ) | |
| The Partnerships and Unincorporated | ) | |
| Associations Identified on Schedule A, | ) | |
| Defendants | ) | |

### Complaint

Plaintiff George & Company LLC ("Plaintiff" or "George & Company"), by and through its undersigned counsel, hereby brings this Complaint against the Partnerships and Unidentified Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### Nature of the Action

1. Plaintiff, a world-renowned game company and the owner and distributor of the award winning LCR® dice game, files this Complaint against Defendants to combat online counterfeiters who trade upon Plaintiff's commercial reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed counterfeit products, including dice games, using counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit LCR Products").

2. Defendants create fully interactive, commercial Internet stores operating under at least the online marketplace accounts identified in **Schedule A,** attached hereto (collectively, the "Defendant Online Stores") and are intentionally designed to appear to be selling genuine LCR products, while actually selling Counterfeit LCR Products to unknowing consumers.

3. The Defendant Online Stores share identifiers, such as using similar product photographs, and fungible design elements and similarities of the counterfeit products offered for sale, establishing

a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

4. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's federally registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit LCR Products over the Internet.

5. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and accordingly seeks injunctive and monetary relief.

## Jurisdiction and Venue

6. This Court has original subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)-(b).

7. This Court has jurisdiction over the claims herein arising under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, and this Court may properly exercise personal jurisdiction over Defendants, because each Defendant directly targets its business activities toward consumers in the United States, including Illinois and this Judicial District. Defendants reach out to do business with residents of Illinois and this Judicial District by operating one or more commercial, fully-interactive Defendant Online Stores through which residents of Illinois and this Judicial District can purchase products being offered and sold under counterfeit versions of Plaintiff's federally registered trademarks. Each Defendant has targeted

sales from residents of Illinois and this Judicial District by operating a Defendant Online store that accepts payment in U.S. dollars and offers shipping to addresses within Illinois and this Judicial District for products offered with counterfeit versions of Plaintiff's federally registered trademark. Each Defendant has committed and is committing tortious acts in Illinois and this Judicial District, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## Parties

9. Plaintiff George & Company is a limited liability company which is organized under the laws of New York and sells its LCR-branded dice game products throughout the United States, including Illinois.

10. Plaintiff specializes in the creation, manufacture, marketing, and licensing of products which display Plaintiff's internationally recognizable and federally registered LCR trademark (collectively, "Plaintiff's Products").

11. Plaintiff has invested substantial resources, time, money, and commercial efforts in order to establish the goodwill of Plaintiff's Products and their federally registered trademarks. The success of Plaintiff's business enterprise is dependent and a result of its effort to marketing, promoting, and advertising online via e-commerce.

12. The success of Plaintiff's Products additionally stems from sales to consumers and interest that its consumers have generated.

13. As a result of the efforts of Plaintiff, the quality of Plaintiff's Products, the promotional efforts for its products and designs, the members of the public have become familiar with Plaintiff's Products and federally registered trademarks and associate them exclusively with Plaintiff.

14. Plaintiff has made efforts to protect its interests in and to Plaintiff's federally registered trademarks. Plaintiff is the only businesses and/or individuals authorized to manufacture,

import, export, advertise, offer for sale, or sell any goods utilizing Plaintiff's Trademarks, without the express written permission of Plaintiff. Plaintiff has not licensed or authorized Defendants to use Plaintiff's Trademarks.

15. Defendants are individuals and business entities who own and/or operate one or more of the e-commerce stores under at least the aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff ("Seller Aliases"). On information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Defendant Online Stores. Each Defendant targets the United States, including Illinois and this Judicial District, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit LCR Products to consumers within the United States, including the State of Illinois and this Judicial District.

16. On information and belief, Defendants are an interrelated group of foreign counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of Plaintiff's federally registered trademarks to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

**Plaintiff and its Popular LCR® and LCR LEFT! CENTER! RIGHT!® Dice Games**

17. Plaintiff George & Company is a highly respected, fourth generation family owned business, and the original innovator and maker of the authentic, popular, award-winning LCR® dice game.

Plaintiff George & Company alone invented and created this worldwide best-selling game, known and loved by consumers of all ages and walks of life.

18. Plaintiff George & Company's products are well known to the public, iconic and highly recognizable, including the following familiar examples:







 

19. Plaintiff George & Company has marketed and sold dice, dice games, party games, board games, card games, and/or related entertainment products to the public for more than a century, with the LCR® dice game being its most popular and successful game.

20. Plaintiff George & Company's efforts and accomplishments have made it a well-known and recognized name in the game and related entertainment product industries. George & Company has earned its enviable reputation as a result of its commitment to providing the highest quality goods and products.

21. Plaintiff George & Company's LCR® dice game is distributed and sold throughout the United States and abroad under one or more of George & Company's Marks including LCR®.

22. Plaintiff George & Company's LCR® dice game is a best-selling product, with multiple millions of units of the game having been sold by Plaintiff.

23. Plaintiff George & Company's LCR® dice game has been featured on, among many others, the Today show[1] and the Rachael Ray Show, and televised nationally on the NBC and ABC television networks as well as featured at today.com and rachaelrayshow.com.  The well-known

---

[1] https://www.today.com/home/game-ideas-kids-adults-teens-family-game-night-t118566, last accessed June 7, 2024

TDmonthly Magazine®, a trade magazine for the toy, hobby, game and gift industry, has listed George & Company's game as one of the "Top 10 Most Wanted Games," the Today Show featured the game and retailers often identify George & Company's dice game as their "No. 1" and "biggest" seller.

24. As a result of Plaintiff George & Company's unceasing and wildly successful efforts, the LCR® dice game has been known and loved throughout the world for decades, by people of all ages. For over half a century, George & Company is and has been a highly respected and family owned business, having invented, created, manufactured, launched and continuously supplied one of the most successful games in history. George & Company has done this all within the same, longstanding, family business which dedicates itself to this high quality and original and authentic game.

25. As a result of decades of hard work and dedication, Plaintiff George & Company's LCR® original and authentic dice game has become a classic.

26. George & Company's high-quality game remains today, as it has always been, the one and only original authentic LCR® dice game.

**Plaintiff's Trademark Rights**

27. George & Company LLC is the owner of all right, title and interest in and to, *inter alia*, the trademark set forth below:

| Reg. No. | Trademark | Goods |
|---|---|---|
| 2,989,658 | LCR | IC 28 Dice games, party games and board games featuring specially marked dice and chips |

(hereinafter, collectively referred to as the "LCR Mark"), all with longstanding and prior use, covering a variety of goods and services, including without limitation dice games, party games and board games featuring specially marked dice and chips, and many related goods and services.

A true and correct copy of the registration certificate of the LCR Mark is attached hereto as **Exhibit 1**.

28. The LCR Mark is well-known to the public, legally valid, and subsisting, and owned exclusively by Plaintiff.

29. Plaintiff George & Company's dice game has been widely advertised and extensively offered for sale under the LCR Mark. As a result of George & Company's widespread and extensive use of the LCR Mark, and the public's widespread and favorable acceptance and recognition of it, the LCR Mark haas become assets of substantial value as a symbol of George & Company, its quality goods, goodwill, and reputation.

30. Plaintiff George & Company enjoys considerable success and an enviable reputation in its industry and trade due in large part to its use of, and rights in, the LCR Mark.

31. Plaintiff George & Company has invested significant resources advertising and promoting its dice game using the LCR Mark in order to achieve the success it now enjoys. As a result of George & Company's investment, the LCR Mark has become synonymous with high-quality goods in its industry and related fields. George & Company's dice games have become well known and is in great demand throughout the U.S. and the world.

32. Plaintiff George & Company's Mark has been extensively and continuously advertised and promoted to the public through various means, including, but not limited to, appearances at toy shows, displays in retail stores, and on the internet. Further, George & Company's dice game has received widespread, unsolicited, consumer and industry recognition and acclaim.

33. As a result of such advertising and attention, the public has come to recognize Plaintiff George & Company's dice game bearing the LCR Mark as originating solely from George & Company.

**Defendant's Infringing Acts**

34. Plaintiff has identified numerous fully interactive, ecommerce stores, including those operating under the Seller Aliases, which are or recently were offering for sale and/or selling Counterfeit LCR Products to consumers in this judicial district and throughout the United States.

35. It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[2] with Department of Homeland Security seizures of infringing goods increasing more than 10-fold between 2000 and 2018.[3]

36. Marketplaces like Amazon, iOffer, eBay, Wish, Joom, Vova, and AliExpress, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales manufacturers would otherwise enjoy.

37. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from mainland China, Singapore, and Hong Kong. Footwear and sporting goods, specifically, represented 17% of all seized products and the value of seized goods increased 11% to more than $1.5 billion.[4]

38. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by infringers.[5]

---

[2] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.

[3] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020, available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

[4] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.

[5] Press Release, U.S. Senator Thom Tillis, Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses (Dec. 5, 2019), available at https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislationto-seize-counterfeit-products-and-protect-american-consumers-and-businesses.

39. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

40. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[6]

41. DHS has observed that "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[7]

42. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[8]

43. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."[9]

44. The success of Plaintiff's LCR Mark has resulted in substantial counterfeiting activity and other attempts to misappropriate Plaintiff's proprietary rights. Accordingly, Plaintiff has policed the use of its LCR Mark and has identified many online product listings on marketplaces such as Amazon.com and eBay.com offering for sale and selling Counterfeit LCR Products to consumers throughout the United States including this Judicial District.

---

[6] Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).
[7] *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.
[8] Id., at p. 39.
[9] *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. At 186-187.

45. Defendants collectively employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing ecommerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images which make it very difficult for consumers to distinguish such stores from those of an authorized retailer. On information and belief, Plaintiff has not licensed or authorized Defendants to use the LCR Mark, and on information and belief none of the Defendants are authorized retailers of genuine LCR Products.

46. On information and belief, Defendants engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to their respective ecommerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

47. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit LCR Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being halted.

48. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same

registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and product imagery.

49. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

50. Counterfeiters like Defendants will typically ship counterfeit products in small quantities via international mail to mitigate detection by U.S. Customs and Border Protection. Further, they will typically operate multiple credit card merchant accounts (*e.g.*, PayPal) or use layers of payment gateways to forestall their cashflow being interrupted due to trademark enforcement efforts. On information and belief, Defendants utilize offshore bank accounts and routinely move funds from PayPal and other U.S.-based merchant accounts (*e.g.*, within China) outside the jurisdiction of this Court.

51. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the LCR Mark in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit LCR Products into the United States and into Illinois over the Internet.

52. Each Defendant offers shipping to the United States, including, specifically Illinois. On information and belief, each Defendant has sold Counterfeit LCR Products into the United States and the state of Illinois.

53. Defendants' unauthorized use of the LCR Mark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit LCR Products, including with respect to the sale of such products into the United States, including specifically Illinois, is likely to cause and has

caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**Count I - Trademark Infringement and Counterfeiting, 15 U.S.C. §§ 1114, 1116(d)**

54. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 53.

55. Plaintiff's trademark infringement claims against Defendants are based on their unauthorized use in commerce of counterfeit imitations of the federally-registered LCR Mark in connection with the advertising, distribution, offering for sale, and sale of infringing goods.

56. The LCR Mark is distinctive marks, and consumers have come to expect superior quality from products advertised, distributed, offered, or sold under the LCR Mark.

57. Defendants have advertised, distributed, offered to sell, sold, and are still advertising, distributing, offering to sell, and selling products using counterfeit reproductions of the LCR Mark, including the Counterfeit LCR Products, without Plaintiff's permission.

58. Plaintiff is the exclusive owner of the LCR Mark. Plaintiff's registrations for the LCR Mark is in full force and effect.

59. Upon information and belief, Defendants are aware and have knowledge of Plaintiff's rights in the LCR Mark and are willfully infringing and intentionally using the LCR Mark to market and sell the Counterfeit LCR Products.

60. Defendants' willful, intentional, and unauthorized use of the LCR Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit LCR Products among the general public.

61. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. § 1114.

62. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known LCR Mark if Defendants' actions are not enjoined.

63. Defendants' wrongful advertisement, offering to sell, and sale of the Counterfeit LCR Products have directly and proximately caused injuries and damage to Plaintiff.

### Count II - False Designation of Origin, Passing Off, and Unfair Competition, 15 U.S.C. § 1125(a)

64. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 53.

65. The LCR Mark is distinctive trademark.

66. Defendants' advertising, distribution, offering for sale, and sale of the Counterfeit LCR Products using the LCR Mark has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, and/or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit LCR Products by Plaintiff.

67. By using the LCR Mark in association with the advertising, distribution, offering for sale, and sale of the Counterfeit LCR Products, Defendants create a false designation of origin and a misleading representation of fact as to the true origin and sponsorship of the Counterfeit LCR Products.

68. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit LCR Products to the general public involves the willful use of spurious marks and is a willful violation of 15 U.S.C. § 1125.

69. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known LCR Mark if Defendants' actions are not enjoined.

### Count III - Violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510, et seq.)

70. Plaintiff repeats, re-alleges, and incorporates by reference the allegations set forth in Paragraphs 1 through 53.

71. Defendants have engaged in acts which violate Illinois law including, without limitation: passing off their Counterfeit LCR Products as those of Plaintiff; cause a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to the affiliation, connection, or association with genuine LCR Products; representing that their products have Plaintiff's approval when they do not; and engaging in other conduct as described herein which creates a likelihood of confusion or misunderstanding among the public.

72. Defendants' foregoing acts constitute willful violations of the Illinois Uniform Deceptive Trademark Practices Act, 815 ILCS § 510, *et seq.*

73. Plaintiff has no adequate remedy at all and will suffer irreparable harm to its reputation and goodwill of its well-known LCR Mark if Defendants' actions are not enjoined.

**Prayer for Relief**

**WHEREFORE**, Plaintiff, George & Company LLC, prays for judgment against Defendants as follows:

1) That Defendants, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the LCR Mark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine LCR product or is not authorized by Plaintiff to be sold in connection with the LCR Mark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine LCR product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the LCR Mark;

c. committing any acts calculated to cause consumers to believe that Defendant's Counterfeit LCR Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the LCR Mark and damaging Plaintiff's goodwill;

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the LCR Mark, or any reproductions, counterfeit copies, or colorable imitations thereof;

f. using, linking to, transferring, selling, exercising control over, or otherwise owning a business that is being used to sell products or inventory not authorized by Plaintiff which bear the LCR Mark;

g. operating, facilitating and/or hosting websites which are involved with the distribution, marketing, advertising, offering for sale, or sell products or inventory not authorized by Plaintiff which bear the LCR Mark;

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon and eBay sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and

Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

    **a.** disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the LCR Mark;

    **b.** disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods using without authorization the LCR Mark;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LCR Mark be increased by a sum not exceeding three times the amount thereof pursuant to 15 U.S.C. § 1117(a);

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for the unauthorized use of each LCR Mark for each registered good or service;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs as available pursuant to 15 U.S.C. § 1117, and other applicable law; and

6) Award any and all other relief that this Court deems just and proper.

Dated: June 7, 2024

Respectfully submitted,

/s/Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60661
adamu@au-llc.com
Ph. (312) 715-7312
*Counsel for Plaintiff George & Company LLC*